In the Matter of COUNTY OF SUFFOLK.

Second Department, March 7, 1977

*Howard E. Pachman, County Attorney (Stanley S. Corwin* of counsel; *Anton J. Borovina* on the brief), for County of Suffolk and others.

*Gary N. Weintraub* for Suffolk County Legislature and others.

*Hartman & Alpert (Allen Morganstern* of counsel), for Eugene R. Kelley.

GULOTTA, P. J. In an action on submitted facts pursuant to CPLR 3222 to declare the rights of the respective parties, the initial question for determination is whether a resolution duly adopted by the Suffolk County Legislature appointing a police commissioner pursuant to subdivision a of section 1202 of the County Charter (L 1958, ch 278, as amd) must be submitted to the County Executive for his approval or disapproval pursuant to subdivision (a) of section 223 of that charter (L 1958, ch 278, as amd by Local Laws, 1969, No. 16). (In this connection we regard the special resolution adopted by the Suffolk County Legislature on March 1, 1977, authorizing the appearance of Gary N. Weintraub, Esq., to represent it in these

proceedings, as also sanctioning the submission of this controversy in the first instance.)

By order of this court at oral argument, and upon consent of the parties, the controversy has been expanded to include the question of whether the term of the incumbent Police Commissioner, Eugene R. Kelley, expires on March 16, 1977 (as set forth in the resolution appointing him, dated May 22, 1973), or on May 22, 1979, as he contends.

The first question, whether submission of the resolution of appointment to the County Executive is required, should be answered in the affirmative. As for the term of office of the incumbent Police Commissioner, it must be deemed to expire on March 16, 1977.

On May 22, 1973, the Suffolk County Legislature adopted, and the County Executive approved, Resolution No. 382-1973, appointing Eugene R. Kelley as Police Commissioner of the County of Suffolk "to fill the unexpired term of [Commissioner] John L. Barry, who has resigned, said term to expire on March 16, 1977". Thereafter, and on February 1, 1977, the Legislature adopted Resolution No. 103-1977, appointing Donald J. Dilworth as Commissioner Kelley's successor, effective March 17, 1977. Both resolutions were adopted pursuant to subdivision a of section 1202 of the Suffolk County Charter, which provides, in pertinent part, that "[t]he commissioner of police shall be appointed by the county legislature for a term of six years." (L 1958, ch 278, as amd by Local Laws, 1975, No. 25.) Two days after this second resolution, and on February 3, 1977, Terrence G. Pearsall, the Clerk of the Suffolk County Legislature, advised County Executive John V. N. Klein that Resolution No. 103-1977 would not be submitted to him for his approval or disapproval, apparently taking the position that such submission was not required. The County Attorney disagreed, whereupon the instant action was commenced.

Subdivision (a) of section 223 of the County Charter provides, *inter alia*, that "[n]o local law or resolution, other than a resolution relating to procedure, shall take effect until it has been submitted to the county executive for his approval." It is conceded by the parties that the resolution in issue (No. 103-1977) was not designated as a "procedural resolution".

A reading of section 223 makes it clear that *all* resolutions and local laws, other than those relating to procedure, must be submitted to the County Executive for his approval or disapproval, and, pursuant to subdivision (c) of that section, in

the event of his disapproval, shall not be effective unless passed by the Legislature, on reconsideration, by affirmative vote of two thirds of its total membership. Subdivision (d) of that section further provides that if the County Executive fails to return such proposed resolution or local law within 15 days of its submission to him, it shall be deemed approved.

It is noted that appointments by the County Executive of the heads of all of the various departments are specifically required by the charter to be made with the approval of the County Legislature, unless otherwise provided. While it is true that, in dealing with the appointments of the Commissioners of Police and of the Department of Parks, Recreation and Conservation (Suffolk County Charter, §§ 1202, 2801 [L 1958, ch 278, as amd by Local Laws, 1966, No. 1]), no reciprocal requirement of approval by the County Executive was set forth *in haec verba,* such omission, in the light of the over-all requirement of approval with respect to resolutions other than those relating to procedure, should not be construed as designed to dispense with the County Executive's approval, thereby circumventing the clear mandate of subdivision (a) of section 223. There is nothing in the charter itself, or its legislative history, which would be indicative of an intent to exclude the County Executive *entirely* from the selection process. Certainly, under normal circumstances, "input" by the County Executive in the appointment of a police commissioner, with whom he must work daily on matters affecting the safety and security of the citizens of Suffolk County, would be most desirable and constructive. Accordingly, it is more in keeping with the concept of effective administration not to read into the omission with respect to the appointments provided in sections 1202 and 2801 any intent to remove the approval of these appointing resolutions from the aegis of the County Executive. Had such been the intention, it could have been achieved simply by providing that the resolution appointing the Police Commissioner should be "procedural" in nature, or otherwise exempt from the provisions of subdivision (a) of section 223 (see, also, Suffolk County Charter, § 222 [L 1958, ch 278, as amd by Local Laws 1969, No. 16] ["[p]resentation of local law or resolution to county executive"]), and, absent such provision or exemption, the over-all applicability of these sections may not be disregarded.

The foregoing rationale is further borne out by the fact that where it was intended to dispense with submission of a

resolution to the County Executive (see, e.g., Suffolk County Charter, § 218, subd [a] [Local Laws, 1969, No. 16] [the "[a]ppointment * * * of clerk of the county legislature"], the charter specifically mandated the Legislature to act by *"procedural* resolution" (emphasis supplied), thus rendering unnecessary submission to the County Executive pursuant to subdivision (a) of section 223. Inasmuch as the power of the county cannot, "except as otherwise expressly provided," be exercised by a means *other than* by resolution or local law (County Law, § 153, subd 1), the clear language of section 223, when read in conjunction with section 1202 of the charter and section 153 of the County Law, should be construed as providing that the Legislature must exercise its power of appointment by way of resolution, and that the resulting enactment, being nonprocedural, must be submitted to the County Executive for his approval or disapproval (see *People ex rel. Ennis v Schroeder,* 76 NY 160; cf. *Wiley v Hope,* 49 AD2d 466). Moreover, submission of the appointing resolution to the County Executive for his approval, pursuant to section 223 of the charter, should not be interpreted as negating the Legislature's power of appointment, since it still remains open to the Legislature to override any possible executive veto (see Suffolk County Charter, § 223, subd [c]).

Effect can thus be given to both sections 223 and 1202 of the charter, without doing violence to either, in a manner which comports well with the system of checks and balances inherent in our system of government. Furthermore, with the exception of two instances occurring shortly after adoption of the charter in 1958, the practice of submitting such resolutions to the County Executive for his approval has been routinely followed in Suffolk County. The first exception occurred in March, 1959, before the charter (and, perforce, section 223) became operative, and was dictated by the provision in the charter itself which states that "[e]xcept as provided in section twelve hundred two of this article, the [county] police department shall become activated and function [on the same date that the charter shall become effective]" (Suffolk County Charter, § 2309, subd 3). This provision was apparently designed to provide for the "staffing" of the department prior to the charter's effective date, so that the department could begin to function immediately thereafter, and it was pursuant to the authority conferred in section 2309 that the pre-charter Board of Supervisors adopted a resolution providing, *inter alia,* as follows:

"WHEREAS, Article XII of the Suffolk County Charter creates a Suffolk County Police Department the head of which is the Commissioner of Police, and said Commissioner is appointed by the Board of Supervisors *and it is desirable to appoint said Commissioner so that proper plans and preparations can be made for the operation of the Suffolk County Police Department when it begins to function on January 1, 1960,*

"RESOLVED, that Charles R. Thom, a resident of Port Jefferson, Suffolk County, New York, be and he hereby is appointed as Commissioner of Police and head of the Suffolk County Police Department, for a term of six (6) years, beginning March 18, 1959, and the compensation for such position be and hereby is fixed at the sum of $15,000.00 per year." (Emphasis supplied.)

At that time, since there was no County Executive yet in existence, no submission of that resolution could have been made.

The second exception occurred upon the appointment of Commissioner Thom's successor in 1962, and resulted in an inconclusive confrontation between the County Executive and Board of Supervisors, in which each maintained the positions presently urged by the parties to this action.* No subsequent clarification has been forthcoming, but the prevailing practice following these two occasions has been to forward all resolutions appointing the Police Commissioner to the County Executive for his approval. It is also interesting to note that in the case of the Commissioner of Parks, where the charter selection process is identical in verbiage to that of the Police Commissioner, the Legislature has, in every instance, submitted the appointing resolution to the County Executive for his approval or disapproval. Accordingly, we deem the refusal to submit Resolution No. 103-1977 to County Executive Klein to be unauthorized.

Turning briefly to the contentions of Police Commissioner Kelley, we note that both the provisions of section 38 of the Public Officers Law and subdivision 7 of section 400 of the County Law authorize the appointment of a successor to an appointed official, as was done in the instant case, for the

---

* At that time, the Board of Supervisors submitted the appointing resolution to the County Executive, who proceeded to veto it. When returned to the board for reconsideration, it denied the County Executive's power to veto the resolution, but nevertheless proceeded to override that veto by the necessary two-thirds vote.

balance of his unexpired term. The cases cited by the Police Commissioner are not to the contrary (see, e.g., *People ex rel. Ewell v Robson,* 253 App Div 127, affd 278 NY 585), and can do nothing to "convert" the resolution appointing him "to fill the unexpired term of * * * [his predecessor]" into an "original" six-year appointment. His contentions must therefore be rejected.

Predicated on the foregoing, it is hereby declared (1) that subdivision (a) of section 223 of the Suffolk County Charter requires the submission of a resolution appointing a Police Commissioner to the County Executive for his approval or disapproval and (2) the term of the incumbent Police Commissioner, Eugene R. Kelley, ends on March 16, 1977, the date of termination of the unexpired portion of his predecessor's term, to which he was properly appointed by Resolution No. 382-1973.

TITONE, J. (concurring in part and dissenting in part). I agree with the majority's determination that incumbent Police Commissioner Eugene R. Kelley was validly appointed to fill the unexpired term of his predecessor and that his tenure expires on March 16, 1977. However, I do not subscribe to the majority's conclusion that the appointment by the County Legislature of a new police commissioner to succeed Commissioner Kelley, is subject to the approval or disapproval (veto) of the County Executive. After a detailed examination of the county charter in its entirety, I am convinced that the power of the County Legislature to appoint a police commissioner is absolute and that any veto of such appointment would be a nullity.

Article II of the county charter, entitled "The County Legislature" (L 1958, ch 278, as amd by Local Laws, 1969, No. 16), is primarily concerned with the composition and legislative powers and procedures of that body. Specifically, sections 202 through 222 of that article pertain, *inter alia,* to the Legislature's "powers of local legislation and appropriation", the number of legislative districts, the terms of office and qualifications of its members, consideration of local laws, etc. Accordingly, it seems clear that section 223 of the same article, entitled, "[e]xecutive approval or disapproval of local law or resolution", perforce, relates solely to those legislative powers conferred upon the Legislature under article II. It does not, by illogical extension or innuendo, inhibit actions taken by that body which are executive and ministerial in nature

and fall outside the scope of the article (cf. *Nicoletti v Veitch,* 411 Pa 216). A chief executive of a municipality has veto power only when and to the extent it is given him, and such power should not be enlarged by a strained construction *(Matter of Srogi v Cahill,* 72 Misc 2d 775, affd 40 AD2d 948; cf. 5 McQuillin, Municipal Corporations [3d ed], § 16.42; 62 CJS, Municipal Corporations, § 423). The veto power may not be exercised by the executive in instances where the legislature or council is given the exclusive power of appointment, and no mention is made of any role in that regard for the executive *(Wiley v Hope,* 49 AD2d 466; cf. *Haight v City of Blue Ridge,* 132 Ga App 545).

The law is settled that, in the absence of clear and unambiguous language to the contrary, the veto power, although usually conferred upon the head of government, is essentially legislative in nature and not executive. In exercising a legislative veto, the chief executive of government is essentially another branch of the legislative body (cf. *Matter of City of Long Beach v Public Serv. Comm.,* 249 NY 480, 489; *Teeval Co. v Stern,* 301 NY 346, 362; *Matter of Four Maple Drive Realty Corp. v Abrams,* 2 AD2d 753). The purpose of the veto power is to guard against the passage of bad laws through haste, inadvertence or design *(Matter of City of Long Beach v Public Serv. Comm., supra;* 62 CJS, Municipal Corporations, § 423). In this instance the practical effect of the veto power would not be merely to check hasty legislative action, but instead would seriously impair or remove altogether the power of the Legislature to fill vacancies, a power exclusively bestowed upon it under the charter (cf. *Nicoletti v Veitch,* 411 Pa 216, *supra).*

In stretching section 223 to apply beyond the confines of article II, to article XII, the majority opines that it was "unnecessary" for section 1202 to provide for the submission of a resolution appointing a police commissioner to the County Executive for his approval, since the language of subdivision (a) of section 223 renders such reference unnecessary. However, if such reference was unnecessary with respect to the appointment of a police commissioner by the Legislature under article XII, then the question is respectfully posed as to why the architects of the charter found it necessary to specifically provide for submission to the County Executive for his approval or disapproval (veto) of resolutions amending the county expense and capital budgets under article IV of the

charter. To carry the majority's argument to its illogical extreme, to wit, that all nonprocedural resolutions are subject to veto, would mean that a legislative resolution disapproving a County Executive appointment under other articles of the charter, could likewise be vetoed.

Turning again to the Suffolk County Charter, it should be noted that, with the exception of elected public officers, all major department heads of county government are explicitly appointed by the County Executive, subject to the approval of the County Legislature, except for two, namely the Police Commissioner (§ 1202, subd a), and the Commissioner of Parks, etc. (§ 2801, subd [b]). Had the draftsmen of the charter intended the executive to have veto power over the Legislature's appointments, as the Legislature was granted the power to approve or disapprove the executive's appointments, then such veto power would logically have been explicitly granted to the executive (cf. *Rankin v Shanker,* 23 NY2d 111). However, it was not. A power which is not expressly granted by statute may be implied only where the same is absolutely essential to the exercise of some power expressly conferred, so as plainly to appear to have been within the intention of the Legislature *(Saltser & Weinsier v McGoldrick,* 295 NY 499).

Contrary to the argument advanced by the majority that the veto provision in article II should be read *in tandem* with the exclusive appointment power of the Legislature, because of our "inherent" political "checks and balances" system, I conclude, after a close reading of the subject charter, that essentially it is a legislature-oriented document. This is especially evidenced by the fact that, with respect to the appointment of most of the major department heads, the Legislature must give its final approval, and with respect, *inter alia,* to appointment of the Police Commissioner, the Legislature is given the exclusive power of appointment. Furthermore it should also be noted that under subdivision 1 of section 2209 of the charter, *"[a]ny appointed officer may be removed by the board of supervisors [now the County Legislature, see County Law, § 150-a],* or if appointed by the county executive may also be removed by the county executive *with the approval of the board of supervisors [County Legislature]".* (Emphasis and bracketed matter supplied.) Thus, it is manifest that those who created, designed and implemented this charter vested the Legislature, and not the County Executive, with the predominant role and ultimate voice in the selection and

removal processes. In the last analysis, the true "checks and balances" inherent in this charter is the right of the electorate to pass upon the legislators' actions every two years, which actions include appointments made or approved by them for four- or six-year periods.

The majority further asserts that there is nothing in the charter or its history indicating an intent to exclude the County Executive entirely from the selection process of a police commissioner. However, this is not borne out by the facts. The record reveals that the first Police Commissioner was selected by the then Board of Supervisors for a full six-year term pursuant to section 1202 of the charter before the position of County Executive came into being. In searching the four corners of the charter, I find no transitory provision limiting the first appointment of a police commissioner to the exclusive domain of the County Legislature, although such a provision could easily have been inserted by those who drafted the instrument, had that been their intent.

Therefore, in my opinion, a declaratory judgment should be made and entered herein declaring that the resolution appointing Donald J. Dilworth as Suffolk County Police Commissioner is effective, without need to submit that resolution to the County Executive for his approval or disapproval; and that the County Executive does not have the power to veto said resolution.

MARTUSCELLO and DAMIANI, JJ., concur with GULOTTA, P. J.; TITONE, J., concurs in the second declaration of the majority, but otherwise dissents and votes to declare that the resolution appointing Donald J. Dilworth as Suffolk County Police Commissioner is effective, without the need to submit that resolution to the County Executive for his approval or disapproval, and that the County Executive does not have the power to veto said resolution, with an opinion, in which HOPKINS, J., concurs.

Judgment directed declaring (1) that subdivision (a) of section 223 of the Suffolk County Charter requires the submission of a resolution appointing a Police Commissioner to the County Executive for his approval or disapproval and (2) the term of the incumbent Police Commissioner, Eugene R. Kelley, ends on March 16, 1977, the date of termination of the unexpired portion of his predecessor's term, to which he was properly appointed by Resolution No. 382-1973.

No costs or disbursements are awarded.