William C. Hecht, J.
Petitioner, 340 East 57 St. Corp., has brought two proceedings, one against the State Rent Adminis *358 trator to set aside the latter’s determination fixing the maximum rents of residential property owned by petitioner, and the other, against the Temporary State Housing Rent Commission, to declare invalid an amendment to the latter’s regulations.
On or about March 20, 1955, petitioner filed an application for an increase in the maximum rents, pursuant to clause (1) of paragraph (a) of subdivision 4 of section 4 of the statute (State Residential Rent Law, L. 1946, ch. 274, as amd. by L. 1955, ch. 685), and subdivision (5) of section 33 of the respondent’s regulations (State Rent and Eviction Regulations).. Petitioner alleged that it had purchased the property on March 1, 1955 for $700,000 and that its assessed valuation was $560,000. At the time the petition was filed, both the statute and subdivision (5) of section 33 of the regulations contained identical language, (a) authorizing an adjustment of maximum rents where “ the rental income from a property yields a net annual return of less than six per centum of the valuation of the property ”, and (b) defining the term “valuation of the property” as “the current assessed valuation * * * which is in effect at the time of the filing of the application for an adjustment ”, provided, however, that “ The commission may make a determination that the valuation of the property is an amount different from such equalized assessed valuation ’ ’ in four specified contingencies, one of which was ‘ ‘ where there has been a bona fide sale of the property within the period between March fifteenth, nineteen hundred fifty-one, and the time of the application ”.
On October 26, 1955, the local rent administrator adopted the assessed valuation as the basis for computing the 6% return to petitioner, without any consideration of the purchase price paid by petitioner or of the bona fieles of the sale to petitioner or of the surrounding circumstances. Petitioner, dissatisfied with the increase of maximum rents allowed by the local rent administrator, filed a protest, contending that the 6% return should have been calculated on the basis of the purchase price, and that the local rent administrator improperly followed section 33-b of an accounting manual employed by him which states that “ where there is a purchase of the property subsequent to a grant under section 33(5) on a 6% basis and the purchase price is higher than the current equalized assessed valuation, the purchase price cannot be accepted since the grant has enhanced the value of the property and therefore represents a special circumstance”. The local rent administrator had refused to use the purchase price as the basis for the 6% computation only because a previous owner of the property had, during the year 1954, obtained increases of maximum rents for *359 various accommodations in the building, pursuant to subdivision (5) of section 33 of the regulations.
On January 30, 1956, while this protest was awaiting determination, Amendment 50 was adopted, amending subdivision (5) of section 33 of the regulations by adding the words italicized in the following quotation: ' ‘ where there has been a bona fide sale of the property within the period between March 15, 1951 and the time of filing the application, except where such sale occurred after an adjustment of the maximum rents under this paragraph”. (Italics supplied.) On February 3, 1956, petitioner amended its protest by including an objection to such amendment. On February 15,1956 the protest to the fixation of the maximum rent was determined by the Administrator. He ruled that ' ‘ where there has been a prior increase in the maximum rents under this section (33 [5]) the Local Rent Administrator properly used the equalized assessed valuation and not the purchase price ”. On March 20, 1956, the protest to the adoption of Amendment 50 was denied. The present proceedings, to set aside the fixation of the maximum rents and to declare invalid Amendment 50 followed.
Petitioner contends, inter alia, that Amendment 50 is illegal and void in that it constitutes an unauthorized attempt to change the statute by adding a provision forbidding the use of the purchase price as the valuation of the property where there has been a previous adjustment of the maximum rent, and (2) that the Administrator’s refusal to exercise the discretion vested in him to use .the price obtained upon a bona fide sale as the valuation of the property, solely because there had been a prior increase of the maximum rent, was arbitrary and capricious and without reasonable basis.
The statute, as previously observed, expressly authorized the commission to make a determination that the value of the property is an amount different from the assessed valuation ' ‘ where there has been a bona fide sale of the property within the period between March 15, 1951 and the time of filing the application ’ ’. Under the statute, this court has on a number of occasions declared that the commission was vested with discretion, in the case of a bona fide sale to use the purchase price obtained on the sale instead of the assessed value, as the valuation of the property (Collins v. Abrams, 141 N. Y. S. 2d 641, 642; Kaufmann v. Abrams, 141 N. Y. S. 2d 716, 718, affd. 286 App. Div. 998; Wolfe v. Abrams, 141 N. Y. S. 2d 769, 771). Whenever the Administrator has, in his discretion, adopted a bona fide sales price as the valuation of the property he has been upheld (Matter of Mara v. McGoldrick, 307 N. Y. 856; *360 Mara v. Abrams, 142 N. Y. S. 2d 200; Mallin v. McGoldrick, 141 N. Y. S. 2d 647; Wolfe v. Abrams, supra; Kaufmann v. Abrams, supra). There is nothing in the statute which limits the discretion thus conferred upon the commission to cases where there had previously been no adjustment of the maximum rents. In the circumstances, the adoption by the commission of Amendment 50 which prohibits it from exercising its discretion to deviate from the assessed value where a bona fide sale has been preceded by an adjustment of the maximum rents, constitutes an improper and unauthorized abdication of the discretion which the Legislature expressly indicated it intended the commission to exercise. The amendment is void, since it is inconsistent with the very statute which the regulations seek to administer (Matter of Hoenig v. McGoldrick, 281 App. Div. 663, motion for leave to appeal denied 304 N. Y. 987; Matter of Kaplan v. McGoldrick, 198 Misc. 440).
Respondents contend that Amendment 50 did not represent a change in administrative policy, but was issued only for the purpose of clarifying a revised policy adopted shortly before May 1, 1955 and incorporated in the Manual of Internal Procedures used by the accounting section of the State Rent Commission. Under this revised policy, an increase in maximum rents was regarded as a special circumstance requiring a rejection for valuation purposes, of a subsequent purchase price, even though the sale was bona fide. The change in policy is sought to be defended on the theory that it was necessary to prevent successive spirals of rent increases, predicated upon sales at higher and higher prices as each round of rent increases was attained. Respondents take the position that the administrative policy, in an area where the Administrator is vested with discretion, may be revised and modified, if thought desirable, and that the policy previously adopted is not “ a graven rule * * * beyond this administrator’s competence to reverse if such be the need ’ ’.
The court agrees with the contention that a policy adopted in a field where the Administrator possesses discretion does not thereby necessarily become inflexible and beyond his power to revise or modify. The validity of a revised or changed policy depends, however, as did the validity of the earlier policy, upon whether there is reasonable basis or justification for the policy adopted. The difficulty with the so-called revised policy of the Administrator is that it is arbitrary and capricious and represents a highly unwarranted discrimination between properties yielding a 6% annual net return without the necessity for *361 adjustment of the maximum rents and those which require such an adjustment to bring the yield up to the 6%.
The language of the Manual of Internal Procedures that 1 ‘ The enhancement in value caused by the higher income resulting from such grant (of rent increase) represents a 1 special circumstance ’ ” seems to indicate that the grant of rent increases in hardship cases is looked upon as a favor bestowed upon the property owner, in return for which he may be required to forfeit his statutory right to have the Administrator in his discretion, use the sales price as the valuation of the property. The fact is, however, that increases of maximum rents under subdivision (5) of section 33 of the regulations, where the property does not earn the statutory minimum, are mandatory and are granted as a matter of right, not as favors. The mere circumstance that an application for adjustment of the maximum rent was necessary to bring the yield up to the statutory 6% is insufficient basis for adopting a rule or policy which would thereafter bar the Administrator from exercising his discretion in favor of adopting a subsequent bona fide purchase price as the valuation of the property. This is all the more true by reason of the fact that an owner of property which yields 6% or more without an application for an adjustment of maximum rent is left free to invoke the discretionary power of the Administrator to employ a bona fide purchase price as the valuation of the property. The effect of this unjust discrimination, depending entirely upon the accident of whether a property was returning the statutory percentage on the effective date of the rent control laws, is (1) to penalize the owners of artificially depressed properties by preventing them from selling their properties for as favorable prices as nondepressed properties would command, and (2) to penalize purchasers of such depressed properties by denying them the possibility of using the prices paid by them as the valuation figure although purchasers of other properties may be accorded that privilege in the Administrator’s discretion.
The situation here is somewhat analogous to that presented in Matter of Kimmel v. McGoldrick (202 Misc. 217, 220-221) where this court stated that: " the administrator’s decision is arbitrary in a fundamental sense. His method is fatally defective in that he uses the very rentals which he is permitted to adjust as the sole criterion of determining the valuation on the basis of which he is to fix the new rentals.” In the instant case, the Administrator is attempting to use the mandatory increase of rents which he was required to grant, as a ground for denying to petitioner its statutory right to have the Administrator *362 exercise his discretion as to whether the purchase price rather than the assessed value should be used as the valuation of the property. As petitioner’s brief well puts it: “In other words a property which the state statute found in such a disadvantageous operating position on March 1, 1950, as to yield less than a 6% return is to be forever frozen into this relatively disadvantageous earnings position if the owner is forced to secure a hardship adjustment before rather than after a sale.”
The Administrator’s avowed purpose to prevent spiralling prices and rent increases is a laudable one. He may not, however, in an attempt to accomplish this, arbitrarily deprive owners of properties who receive rent adjustments from all possibility of having the purchase prices paid for such, properties used as the valuation figures in the face of the legislative mandate that the Administrator may use his discretion, in all cases, as to whether the assessed value is to be used or disregarded.
Respondent’s claim that the policy revision, which is embodied in Amendment 50 resulted from the increasing frequency of applications for rent increases, based upon prices obtained after prior adjustments in maximum rent, is convincingly refuted in an affidavit submitted by petitioner’s attorney, Fougner. That affidavit shows, without contradiction, that applications for rent increases in the lower Manhattan rent office, which deals with 500,000 controlled units, dropped 22% in 1955 from the 1954 figure, and that applications for increases involved only 1%% of the 500,000 units. There are altogether only about two million controlled units in New York City and another five hundred thousand in other parts of the State. The affiant’s examination of the records revealed only four instances where rent increases were granted on the basis of the sales prices obtained after prior rent adjustments predicated upon assessed valuations. In a number of eases, prices obtained upon sales subsequent to rent adjustments were lower than the assessed valuations of the properties involved. There accordingly is no factual basis in the record for the Administrator’s claim that the increasing frequency of applications for rent increases caused the policy revision which is under attack in these proceedings.
In view of the conclusions reached, namely: (1) that Amendment 50 is void, and (2) that refusal of the Administrator to consider any valuation other than assessed value, solely because of a higher adjustment of rents, is arbitrary, capricious and without reasonable basis, it is unnecessary to consider the other points made by petitioner, such as the contention that the retroactive application of Amendment 50 to the proceeding for an *363 adjustment of rents, commenced almost a year earlier, is contrary to law.
There remains for determination the claim of petitioner that respondent Weaver, improperly disallowed a projection of a wage increase. At the time of the issuance of the local office order, on October 26,1955, negotiations for a wage increase were in progress. It was only thereafter that a wage increase was awarded. Petitioner contends that because the wage increase award was made retroactive to October 21, 1955, it is entitled to a projection of the wage increase in the computation of its expenditures. On October 31, 1955, prior to the filing of the protest, the Administrator changed his previous policy by providing that after November 1, 1955 allowance for wages under subdivision (5) of section 33 applications would be permanently established at the level properly determined in the local rent office (Bulletin 107, Supp. 2 entitled “ Procedures Relating to Wage Rate and Tax Rate Increases ”)• The bulletin was widely distributed. The purpose of the change was to obviate the necessity of making an increased number of minute calculations on the basis of facts occurring after the issuance of the order by the local rent office. The court is satisfied that reasonable basis exists for the procedure adopted as of November 1, 1955 and the change may not be held to be arbitrary, whimsical or capricious.
The application to declare Amendment 50 invalid and void is granted. The application to set aside the determination of the Administrator is granted to the extent of remitting the matter for the taking of proof as to the bona fides of the sale to petitioner, and as to all other relative circumstances bearing upon the proper exercise of the discretion vested in the Administrator to employ a valuation other than the assessed value in the case of a bona fide sale between March 15, 1951 and the time of the application.
Settle order.