Frank S. McCullough, J.
This is an article 78 proceeding brought by a landlord to review the determination of the State Rent Administrator for building-wide rent increases pursuant to subdivision 5 of section 33 of the State Rent and Eviction Regulations.
Under the State Emergency Housing Rent Control Law as implemented by subdivision 5 of section 33 of the State Rent and Eviction Regulations a landlord is entitled to obtain rent adjustments where needed, sufficient for it to realize a 6% net annual return on the appropriate index of its property’s value. The State Rent Administrator contends that a partial audit of the landlord’s books and records disclosed that the petitioner was already realizing more than the statutorily allowable return. *778 Therefore, according to the State Bent Administrator, no adjustments were warranted and the application was denied.
The application was filed on December 28, 1961, using a test year from November 1, 1960 to October 31, 1961. The Local Bent Administrator apparently consumed 10 months to audit the application, and the order denying the petitioner’s application was not issued until just short of one full year after its submission.
The contention by the State Bent Administrator that no rent increases were warranted is primarily based on the fact that in the Summer of 1962 a number of voluntary increases in rent were obtained by the petitioner from certain tenants by lease agreements.
The principle now before the court is whether, in denying the application, the State Bent Administrator was entitled to take into account the increases in rent obtained by the petitioner after its application was filed and before the respondent’s partial audit was accomplished. The landlord contends that the State Bent Administrator violated a rule of its own established procedure, that of a so-called “ cut-off ” date, namely, the date of the filing of a rent increase application. The landlord argues first that changes in income and expenses occurring or accruing subsequent to the cut-off date should be disregarded, and that it was error in any event to consider the increased rentals after the cut-off date without considering the landlord’s operating expenses during the same period.
With respect to the finality of the cut-off date, the landlord refers to the fact that the State Bent Administrator’s order in the case at bar referred to the cut-off date practice as a “ basic fixed procedure”. Cited by the landlord are: Matter of 340 East 57th St. Corp. v. Weaver (3 Misc 2d 356, affd. 2 A D 2d 678 [1st Dept., 1956]); Matter of Fifty Mark Realty Corp. v. Herman (24 Misc 2d 609 [Supreme Ct., Bronx County, 1959]).
In its order, the State Bent Administrator stated that the cut-off date “ cannot be inflexibly applied”. He cited Matter of 121 East 101st. St. Corp. v. Herman (27 Misc 2d 319, 320) where the court stated:
“ In the instant case, the commission concededly took into consideration changes in the rental income after the expiration of the two-month period primarily because of the two units involved, one which was not available for rental at the time of the application, and the other which then had a token rental of $1 due to violations imposed, thus giving 1 a distorted view of said (rental) income by omitting entirely the rental value of the two aforementioned units.’ Petitioner’s applications were *779 accordingly denied. Contrary to petitioner’s contentions, however, the commission’s actions have no semblance of being arbitrary, capricious or otherwise contrary to law.
“ Pursuant to legislative intent each owner of housing accommodations is entitled to a minimum net annual yield of 6% on the valuation of the property (Emergency Housing Rent Control Law, § 4, subd. 4, par. [a], cl. [1]). In order to facilitate processing of applications filed under this section, accounting practices were adopted by the Rent Commission with the purpose of obviating ‘ the necessity of making an increased number of minute calculations on the basis of facts, occurring after the issuance of the order by the local rent office. ’ (Matter of 340 East 57th St. Corp. v. Weaver, 3 Misc 2d 356, 363, affd. 2 A D 2d 678.) However, where it appears that unusual circumstances are present whereby post cut-off date factors so substantially alter the outcome that they can no longer be characterized as ‘ minute calculations ’, the failure of the Administrator to take them into account would be contrary to the purpose and spirit of rent control laws.”
The court is of the opinion that the cut-off date should not be inflexibly applied, and that some latitude must necessarily be afforded to the State Rent Administrator in determining hardship cases. However, in utilizing this latitude, the State Rent Administrator, by the same token, must extend a corresponding latitude to the landlord to enable him to present his position with respect to expenses or other factors arising after the cutoff date. Otherwise, determination could be made by the State Rent Administrator based primarily on items of income without properly considering items of expense. In the instant case, in view of the long delay between the date of application and the determination, the court finds that the landlord should have had an opportunity to fully present the facts occurring after the cut-off date, once it was determined that the cut-off date would be bypassed.
"While it is true that judicial recognition has been given to the fact that the average processing period takes a minimum of six months (Matter of 410 Parle Ave. Corp. [Weaver], N. Y. L. J., Nov. 20, 1957, p. 6, col. 8 [Supreme Ct., N. Y. County]) this court frowns on the continuing phenomenon of long delays between application date and determination date on rent proceedings. Naturally the expansion of administration processes has placed a great deal of pressure on the personnel employed by administrative agencies. The hiring of trained personnel no doubt lags behind the ever-increasing burden of new applications. *780 Nevertheless, this court clings to the belief that all parties appearing before administrative agencies are entitled to prompt consideration and prompt disposition.
The court directs that the determination of the State Rent Administrator be annulled and this matter be remitted for further proceedings not inconsistent with this opinion. The landlord shall be afforded a full opportunity to present items of expense occurring in the period after the cut-off date.